ALBANY,
Oct. 1834.

Chapin
v.
Marvin.

CHAPIN and others *vs.* MARVIN.

Where a *testator*, after expressing in his last will and testament his intent *to* dispose of all his worldly property, gave to his *wife* all his estate, real and personal, *so long as she should remain his widow;* and in case she married again, directed that the *one half of all his lands* and tenements should go to an adopted son, and by a subsequent clause gave to the same son, at the decease of his wife, *the remaining part of his landed property;* and after the death of the testator, his widow married again, and the son entered into possession of the *moiety* of the lands; *it was held,* as to the *remaining moiety,* that by the will the son acquired in it a *vested remainder;* that his interest in the same was the subject of sale under execution; and that on the decease of the widow, the purchaser at sheriff's sale of the interest of the son was entitled to the possession of such remaining half, although previous to the decease of the widow the son had died.

The devise of the *remaining part* of the landed property of the testator disposes of what was left of the estate as well as interest of the testator, after carving out the *life estate* of the widow.

THIS was an action of *ejectment,* tried at the Ontario circuit in December, 1832, before the Hon. DANIEL MOSELEY one of the circuit judges.

The plaintiffs claimed the premises in question as the heirs at law of *Oliver Chapin,* who they insisted became seised of the same by virtue of a purchase at sheriff's sale, under an execution against one *Oliver Giles Adams,* by virtue of a judgment docketed on the 4th September, 1816. The execution issued on the judgment was made returnable in October, 1816, and on the 4th April, 1817, the sheriff of Ontario, by virtue thereof and the sale had thereon, executed to *Oliver Chapin* a deed, reciting that, by virtue of the execution, he had seised and sold to Oliver Chapin all the right, title and interest of Oliver G. Adams in and to that certain piece or parcel of land, known and distinguished as being part of lot No. 33, in township No 10, in the fourth range of townships in the county of Ontario, reference being had to a deed executed by Nathaniel Norton and Patty his wife to Oliver Adams, on the 2d day of July, 1798, which deed it was admitted by the defendant embraced the land whereof one *Oliver Adams* died seised, and of which the premises described in the plaintiff's

declaration are a parcel. To show title in *Oliver Giles Adams,* the plaintiffs read in evidence the last will and testament of *Oliver Adams,* bearing date 18th May, 1799, whereby the testator, after commencing his will in these words, " And as touching such wordly estate and goods as it has pleased God to bless me with in this life, I give, devise, order, direct and dispose of in the following manner," disposes of his real estate in the words following : "I order and direct that my dear and well beloved wife Susanna Adams shall have and possess all my estate, real and personal, both lands and tenements, goods and chattels, *so long as she shall remain my widow;* but provided she shall marry to another man, *then the one half of all my estate,* lands and tenements, shall be given to *Oliver Giles Adams,* (a child whom we have adopted,) at such time as he shall be twenty-one years of age ; (and then, after charging Oliver Giles Adams with the payment of certain legacies after he shall come into possession of the *aforementioned* premises, proceeding as follows :) the *remaining part of my landed property* shall be given to the aforesaid Oliver Giles Adams, *at the decease of my aforementioned wife Susanna Adams.*" In 1804, Oliver Adams died in possession of a farm of which the premises claimed are a part. About two years after his death, his widow intermarried with one Joab Loomis, and resided with her second husband on the premises claimed in this suit until her death, in 1830. Soon after the marriage of the widow with Loomis, *Oliver Giles Adams* entered and took possession of *one half* of the farm whereof Oliver Adams died seised, and remained in possession until *Oliver Chapin* entered under his purchase at sheriff's sale, which entry was previous to the death of Oliver Giles Adams, which happened in 1825 ; and the possession thus taken was continued in Oliver Chapin until his death, and still remains in his heirs. The heirs of Oliver Chapin now claim that since the death of the widow of Oliver Adams, they have been and are entitled to recover *the remaining half* of the farm whereof Oliver Adams died seised. The jury, under the charge of the judge, found a verdict for the plaintiffs, which the defendant now moves to set aside.

*J. A. Spencer & S. Stevens*, for the defendants, insisted, 1 That Oliver G. Adams had not such an interest in the premises in question as could be affected by a judgment against him, or sold on an execution; and 2. That by the will, Oliver G. Adams took only a contingent interest, depending upon his surviving the widow of the testator, and that he did not take a *vested remainder;* and having died previous to the termination of the estate of the widow, the title to the premises in question vested in the *heirs at law* of the testator.

*J. C. Spencer*, for the plaintiffs, made the following points: 1. By the devise of *the remaining part of the testator's landed estate* to Oliver G. Adams, the *residue*, after taking out the widow's *life estate*, passed to Oliver G. Adams; 2. That the interest, which thus passed to him was the *remainder of the estate in fee*, and that it vested on the death of the testator; and 3. That the interest of Oliver G. Adams in the premises in question was subject to sale under the judgment obtained against him, and the execution issued thereon.

*By the Court*, NELSON, J. There can be no doubt, upon reading the will in question, as to the true intent of the testator, and that is to govern if not inconsistent with the rules of law. The testator intended to effect three things: 1. To give to his wife an estate for life in the whole of the premises, if she continued a widow; 2. On her death, that the estate should go to Oliver G. Adams; and 3. That if his wife married, a moiety of the estate should in that event, pass to Oliver G. Adams in possession. Adams took a vested remainder in the whold estate, because it depended upon a certain event, to wit, the death of the widow, who took a life estate by implication, determinable as to a moiety on the second marriage. The conditional limitation to the precedent estate, (the estate for life,) to wit, the second marriage, gave to Adams the possession of a moiety on the happening of that event. Fearne. 19, Butler's Notes. Pages 6 and 11 of Fearne; also p. 239. As to conditional limitations generally, see Fearne, p. 9, &c.

ALBANY,
Oct. 1834.

Chapin
v.
Marvin.

At common law, there could have been no doubt that the remainder of the moiety of the premises in question would have been a vested remainder. An estate during widowhood of one moiety would have been created by the terms of will, and for life of the other, with remainders to Adams; the *first* would have been contingent, that event being uncertain; the *second*, a vested remainder. Upon this rule of construction, if the widow had not married, she would have held the one moiety, depending upon that contingency, during life; and the event not happening, it would then have gone to the heirs of the devisor. But in construing wills, the intent of the devisor is to control; and we cannot but see that Adams was to take the whole estate upon the death of the widow. The clause disposing of the " *remaining part of my landed property,*" as expressed in the will, gives what was left after taking out the estate devised to the wife upon the conditional limitation. If there had been no limitation in the will, the wife clearly, under the word, " all my estate, real and personal," would have taken the whole estate in fee. 18 Ves. 195. Cowp. 306, 7, 8. 9 Johns. R. 222. 6 Cruise, 192, &c. 11 Johns. R. 365. 12 id. 389. We need not cite authoritities to show that a vested remainder may be sold under an execution. We see no difficulty in the description of the property in the sheriff's deed to the ancestor of the plaintiffs. The *parcel* admitted to be described in the plaintiffs' declaration means, by fair construction, the premises of which the testator, Oliver Adams, died seised.

New trial denied.